UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN THOMAS VIGGIANO,

    Plaintiff,

v.                                              Case No. 6:21-cv-1589-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

    Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the opinions of Jessica Karle, Ph.D., and Scott Kaplan, Psy.D. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

    Plaintiff, who was born in 1967, claimed disability beginning September 30, 2016 (Tr. 198, 202). He was 49 years old on the alleged onset date. Plaintiff obtained less than a high school education, completing the eighth grade, and his past relevant work experience included work as a machine shop supervisor (Tr. 56-58, 233). Plaintiff alleged disability due to obsessive-compulsive personality disorder (OCD),

unspecified personality disorder, adjustment disorder with anxiety, and cocaine abuse, in remission (Tr. 232).

Given his alleged disability, Plaintiff protectively filed applications for a period of disability, DIB, and SSI (Tr. 198-201, 202-07). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 62-115, 121-48). Plaintiff then requested an administrative hearing (Tr. 150-51). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 45-61). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 24-44).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2022, and had not engaged in substantial gainful activity since September 30, 2016, the alleged onset date (Tr. 29). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: depression, bipolar disorder, and adjustment disorder with anxiety (Tr. 30). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: could perform simple, routine, repetitive tasks on a sustained basis over a normal eight-hour workday in a normal work environment; could perform no more than simple decision-making;

and could tolerate occasional close interpersonal interactions with coworkers and the public (Tr. 32).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 37).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 37).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a hand packager, a laundry worker, and a linen room attendant (Tr. 38-39, 59).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 39).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-7, 193-94).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

3

twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

   III.   Discussion

Plaintiff argues that the ALJ erred by failing to properly consider the opinions of Dr. Karle and Dr. Kaplan. Under the regulations, an ALJ will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of

the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5), 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[1] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

    A.    *Dr. Karle*

In March 2020, Dr. Karle completed a Medical Source Questionnaire (Mental) to assist in determining Plaintiff's ability to perform work-related activities (Tr. 403-06). Initially, Dr. Karle opined that Plaintiff's mental impairment would affect Plaintiff's ability to understand, remember, and carry out instructions (Tr. 404). Although Dr. Karle found that Plaintiff's mental impairment would not affect Plaintiff's ability to understand and remember simple or complex instructions or his ability to remember locations and work-like procedures, Dr. Karle determined that Plaintiff's mental impairment would cause mild limitations in his ability to carry out simple instructions; moderate limitations in Plaintiff's ability to carry out complex instructions; marked limitations in Plaintiff's ability to make judgments on simple and complex work-related decisions, maintain concentration for extended periods, and work close to others without being distracted; and extreme limitations in Plaintiff's ability to perform activities with a schedule, maintain regular attendance, and be

---

[1] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

punctual within customary tolerance (Tr. 404). Dr. Karle based those findings on Plaintiff's rigid thinking (Tr. 404).

Dr. Karle further opined that Plaintiff would experience limitations in his ability to interact appropriately with supervision, coworkers, and the public, as well as in his ability to respond to changes in the routine work setting, given Plaintiff's rigid thinking (Tr. 405). Dr. Karle concluded that Plaintiff would experience marked limitations in his ability to interact appropriately with the public, to ask questions and request assistance, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Tr. 405). In addition, Dr. Karle concluded that Plaintiff would experience extreme limitations in his ability to interact appropriately with coworkers, respond appropriately to usual work situations and changes in a routine work setting, and interact appropriately with supervisor(s), such as responding appropriately to criticism (Tr. 405).

Dr. Karle then determined that Plaintiff would experience limitations in his life skills (Tr. 405). While Dr. Karle noted that Plaintiff would experience no limitations in his ability to be aware of normal hazards and take appropriate precautions, Dr. Karle determined that Plaintiff would experience moderate limitations in his ability to travel to unfamiliar places or use public transportation and would experience marked limitations in his ability to set goals and adhere to them without assistance (Tr. 405). Besides the listed limitations, Dr. Karle concluded that no other capabilities would be affected by Plaintiff's mental impairment (Tr. 405).

When asked on what date Dr. Karle believed that Plaintiff's limitations first presented themselves, Dr. Karle indicated that Plaintiff's limitations began in childhood (Tr. 406). Then, in response to a question asking whether alcohol or substance abuse contributed to Plaintiff's impairments, Dr. Karle noted that, although Plaintiff had a history of abuse, he was not currently using substances (Tr. 406). Lastly, Dr. Karle opined that Plaintiff could manage benefits in his own interest but could not sustain an eight-hour workday for five days per week because Plaintiff was unable to adhere to rules and the expectations of others (Tr. 406).

After summarizing Dr. Karle's findings, the ALJ found Dr. Karle's opinion to not be persuasive, stating:

> The undersigned finds Dr. Karle's assessment to be not persuasive because it is not consistent with any findings on examination, as the assessment did not contain any exam findings other than "rigid thinking." In addition, the assessment did not contain any diagnoses of medical conditions, and thus did not represent a complete function-by-function analysis of the claimant's impairments and limitations. Further, the undersigned notes that other objective exam records in the overall record did not support Dr. Karle's extreme levels of limitations, given the relatively mild to moderate findings on examination found throughout the record.

(Tr. 34) (citations omitted). Plaintiff argues that the ALJ's evaluation of both the supportability and consistency factors are deficient as to Dr. Karle's opinion. I agree.

As Plaintiff contends, medical opinions "should not be considered in a vacuum," but rather, the ALJ should consider medical practitioners' earlier reports as the bases for their statements, meaning that an ALJ should interpret a medical practitioner's answers to questionnaires in light of his or her treatment notes. *See*

*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (citation and internal quotation marks omitted).  Review of Dr. Karle's treatment notes shows diagnoses of adjustment disorder with anxiety, obsessive-compulsive personality disorder, cocaine abuse in remission, and unspecified personality disorder (Tr. 393, 397).  Her treatment notes likewise show some unremarkable findings on examination, such as normal speech, intact memory, full orientation, and a good fund of knowledge, but also repeatedly identified more significant objective findings on examination and assessments, such as irritable or anxious mood; restlessness; evasive and guarded affect, which may have been related to Plaintiff's distrust of others; no response to internal stimuli; egocentric thought content or thought content revealing rumination, pessimism, catastrophizing, self-deprecation, and guilty thoughts; rigid thinking and focused conversation on work issues; limited insight; limited judgment; appeared in distress and endorsed symptoms of anxiety; rubbed his head, wrung his hands, and shifted in his seat throughout an examination; showed signs of stubbornness and ongoing frustration; experienced greater isolation and less sleep; and had more obsessive thinking while working on a project, which he found frustrating (Tr. 393, 397, 399, 401, 402, 420, 423, 424, 425, 427, 454, 456).  Dr. Karle's findings seem to reflect that Plaintiff experienced more than just occasional mild to moderate symptoms.

      Further, they comport with the findings from Dr. Kaplan (Tr. 451-53).  In November 2020, Dr. Kaplan conducted a general personality evaluation of Plaintiff, administering a clinical interview, mental status examination, and incomplete

sentence blank test (Tr. 451-53). During the examination, Plaintiff reported experiencing depression and anxiety, with an onset in childhood secondary to significant family issues that continued through the present as chronic, ongoing, and progressive impairments mainly centered around his PTSD (Tr. 451). The PTSD stemmed from his brothers locking him in a funeral parlor for one day at the age of 10, which led to continuing nightmares and flashbacks and avoidance of reminders of the incident (Tr. 451). Plaintiff reported multiple inpatient psychiatric hospitalizations from his early 40s through the date of the examination along with formal outpatient mental health treatment from childhood through the date of the examination but indicated that he did not take any psychotropic medications at that time (Tr. 451). Though Plaintiff admitted to using cocaine between the ages of 36 and 50 and being arrested multiple times from the age of 16 through a few years prior, he indicated that he did not consume alcohol or use any other illicit drugs and denied any pending legal issues at present (Tr. 451).

      Dr. Kaplan noted that Plaintiff presented with an increased startle response, feelings of detachment, a restricted range of affect, sleep disturbance, reduced energy level, crying spells, hopelessness, helplessness, anhedonia, and excessive "worrisomeness" and nervousness with occasional suicidal ideation (Tr. 451). Dr. Kaplan observed evidence of both a generalized anxiety disorder and a recurrent, moderate, major depressive disorder but no evidence of hallucinations, paranoia, delusional thinking, confusion, mania, or brain injury (Tr. 451). Upon examination, Dr. Kaplan indicated that Plaintiff was dressed appropriately and fully oriented; his

speech processes were clear and logical; there was no evidence of any circumstantiality and/or pressure speech; both his mood and affect were significantly anxious and depressed; his thought processes were logical, sequential, and organized; there was no evidence of any hallucinations, delusions, and/or illusions; he experienced occasionally based suicidal thinking but denied homicidal thinking; his concentration and memory functioning were both poor; he was only able to recall five digits forward and three digits backward; and he was cooperative with the testing such that Dr. Kaplan believed the testing validly reflected Plaintiff's present clinical condition (Tr. 452). Dr. Kaplan found that Plaintiff's activities of daily living were markedly limited and restricted secondary to Plaintiff's significant psychological impairments, including letting days go by without even attending to his personal hygiene and grooming due to his depression and anxiety (Tr. 452). Dr. Kaplan further found that Plaintiff's social functioning was markedly limited and restricted, as Plaintiff remained isolated and withdrawn from others due to his mental condition, and that his concentration and task persistence were both poor (Tr. 452).

    According to Dr. Kaplan, the Incomplete Sentence Blank test administered to Plaintiff showed that Plaintiff was currently experiencing significant levels of psychopathology (Tr. 452). The current symptomatology remained consistent with PTSD as well as a major depressive disorder, recurrent, moderate, and a generalized anxiety disorder – each secondary to the PTSD – but with no evidence of any other affect disturbance, mood disorder, formal thought disorder, psychosis, character disorder, or personality disorder (Tr. 452). Dr. Kaplan indicated that Plaintiff met the

criteria under the Listing of Impairments for "Section 12.04, depressive, bipolar, and related disorders, as well as Section 12.06, anxiety, and obsessive-compulsive disorders" (Tr. 452). Based on observations and the test results, Dr. Kaplan opined that Plaintiff was likely to experience mild impairment understanding one- and two-step tasks, moderate to marked impairment understanding complex tasks, and marked impairment getting along in social settings and adapting (Tr. 452). Dr. Kaplan stated that Plaintiff did not appear capable of gainful activity at that time and would very likely experience significant deterioration or decompensation in a work setting due to his combined psychological impairments (Tr. 452). More specifically, Dr. Kaplan opined that Plaintiff would have trouble relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, and maintaining attention and concentration while also not being able to behave in an emotionally stable manner nor relating predictably in social situations and thus being unable to demonstrate reliability (Tr. 452-53). In the end, Dr. Kaplan found Plaintiff's prognosis guarded, noting that he would strongly recommend both psychotropic medication and individual psychotherapy (Tr. 453).

The consultative physical examination conducted by Steven Gallas, D.O., also referenced psychiatric issues and limitations that support Dr. Karle's opinion. Dr. Gallas noted that Plaintiff presented with complaints of anxiety and depression (Tr. 407-08). In identifying Plaintiff's limitations, Dr. Gallas indicated that, when Plaintiff's mental health was uncontrolled or untreated, he would likely have difficulty with day-to-day workplace social interaction (Tr. 412).

The only opinion evidence indicating that Plaintiff remained capable of interacting appropriately with peers, coworkers, and supervisors was that of Yamir Laboy, Psy.D., a state agency medical consultant (Tr. 88-92). The rest of the evidence seems to suggest significant limitations with interpersonal interactions and responding to suggestion or direction. Though the ALJ limited Plaintiff to occasional close interactions with coworkers or the public, the RFC does not address limitations related to interpersonal interactions with supervisors, which the findings of both Dr. Karle and Dr. Kaplan suggest would need to be limited as well. As the ALJ failed to provide substantial evidence in support of his consideration of Dr. Karle's opinion, remand is warranted. Upon remand, the ALJ should reconsider Dr. Karle's opinion.

  B. Dr. Kaplan

For the same reasons, the ALJ erred in his consideration of Dr. Kaplan's opinion. In considering Dr. Kaplan's opinion, the ALJ discussed Dr. Kaplan's examination findings before finding Dr. Kaplan's opinion partially persuasive, stating:

> The undersigned finds Dr. Kaplan's assessment to be persuasive, partially, only where it is consistent with the overall record showing the claimant has severe mental impairments that affect[] his ability to perform tasks and interact socially in the workplace, as discussed above. The undersigned notes that Dr. Kaplan's extreme level of restrictions is not consistent with his own relatively mild to moderate findings on examination, including logical speech and cooperative behavior. The undersigned also notes the other objective medical exams do not support Dr. Kaplan's assessment, given the relatively mild to moderate findings throughout the record, as discussed above. Further, the undersigned also recognizes the fact that this opinion, regarding the capability of gainful activity, relates to a legal conclusion reserved for the Commissioner (20 CFR 404.1527(e)).

(Tr. 36). Like the ALJ's evaluation of Dr. Karle's opinion, Plaintiff argues that the ALJ failed to properly address the supportability and consistency factors for Dr. Kaplan's opinion. Although the ALJ properly rejected the portion of Dr. Kaplan's opinion concerning Plaintiff's capability of performing gainful activity as a legal conclusion reserved to the Commissioner, the ALJ's remaining bases for finding Dr. Kaplan's assessment only partially persuasive are not supported by substantial evidence for the same reasons outlined above. On remand, therefore, the ALJ should reconsider Dr. Kaplan's opinion.

*IV.     Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1.     The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.     The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2023.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record